155181 United States of America v. Mark Sawyer Arguments not to exceed 15 minutes per side Mr. Lloyd for appellant May it please the court, I would like to reserve 3 minutes for rebuttal Thank you, your honor I am Francis Lloyd of the Knox County, Tennessee Bar And with my colleague Ashley Lowe, also of the Knox County Bar And of the Baker Donaldson Law Firm We represented Mr. Mark Sawyer in the trial court below Mr. Sawyer, and I should add that my colleague and friend Mr. Morris Ably represented the United States Mr. Sawyer entered into a plea of guilty And with all of his co-defendants Underwent a lengthy sentencing hearing This appeal concerns not a challenge to the conviction Which was for conspiracy to violate the Clean Air Act Through not following the applicable rules Governing the removal of asbestos containing materials Not the conviction, but the sentence imposed In particular, I have presented on behalf of Mr. Sawyer The defendant, several issues concerning The term of imprisonment, but more broadly The amount of restitution imposed on him in this case In light of the evidence presented Mr. Sawyer is here in this case on appeal To ask the court to vacate the sentence imposed below And not to challenge the conviction This case arose out of a site that dates from decades ago At various times during its existence It's been known as Inca, I believe also Liberty Fibers And was originally a rayon producing plant My client and the other co-defendants in this case Came into the history of this plant rather late Through acquiring the site from a trustee in bankruptcy The site itself as a rayon producer And as a site consisting of multiple buildings That contained a great deal of asbestos containing material Was an environmental problem Problem seems too small a word But an environmental problem from long before Mr. Sawyer and his co-defendants were involved in it I bring that up because I would like to In a little bit of a variation From the order in which arguments are presented In the principle brief on appeal I would like to go first to the argument That the evidence taken by the district court below Judge Greer in the eastern district of Tennessee at Greenville That whether mandatory restitution applies Or discretionary restitution applies That the evidence presented In support of the restitution award Was not sufficient To justify the award of over ten million dollars imposed In the government's case Concerning restitution The government presented the testimony Of an environmental protection agency officer named Ms. Berkey And presented documents through Ms. Berkey As the government itself Admitted to some extent In its brief in response in this case Ms. Berkey was not An individual who was familiar with this site from its beginning In fact, on page 35 as filed Page 28 otherwise Of the government's brief in response The government concedes that defendant Mr. Sawyer Is correct that Ms. Berkey expressed some uncertainty About the site conditions Before defendant's involvement in October 2006 The government goes on to argue That in spite of this The district court could thus logically infer That it was the co-conspirators' activities As opposed to pre-existing conditions What exactly was the uncertainty expressed there? The government's phrase Appears itself to be uncertain I mean, what useful to you Was in that uncertainty? Your Honor, in this case Of course, long before this was a site Taken over for remediation by the Environmental Protection Agency Ms. Berkey was not familiar with the site When she came to the site But the takeover, the remediation process Had already begun So she had no personal experience The remediation process you just mentioned Was by your client and his enterprise No, Your Honor, by the time Ms. Berkey came The EPA already had a contractor on the site Engaging in the remediation That the EPA found When was your client involved? Prior to her showing up? Yes, Your Honor And prior to the EPA taking over the site And that is one of the reasons Why I have contended on behalf of Mr. Sawyer That the proof here is inadequate To show the necessary link of causation Between the crime of which Mr. Sawyer was convicted And that was conspiracy to violate the Clean Air Act Through not honoring what the rules require With respect to the disposition of asbestos-containing materials Insufficient to show the link between that And the total amount of restitution claimed So is the implication that Just for supposition A lot of this asbestos that needed to be cleaned up By the EPA ultimately Was already disturbed And already lying around Before your client ever got there? Yes, Your Honor So did the EPA clean up Places that your client never touched? The EPA basically took over the site And yes, did what was needed to be done But that doesn't answer the question I just asked Did they clean up And charge for places that your client never touched? If that is the case You would think you would have been able to put on evidence of that Well, I'm loath to speak for the EPA, Your Honor But my understanding of the EPA's position is That it kept a running tally Of what its contractor was spending on the site Recorded these tallies in what the EPA calls Scorpion, I believe, reports And that that summary evidence Was sufficient to justify the more than $10 million restitution obligation imposed Am I right, the total At some point The government said they had spent $16 million So they didn't charge you for all of that That's correct, Your Honor And that is in the argument concerning The procedural path by which we got to the restitution obligation The government was unable to present At the time the pre-sentence investigation report was required Much detail about What it spent and the link between My client's crime and the expenditure The figure provided then, the total figure Was over $16 million Later and before sentencing The EPA lowered that to $10 million And then the testimony of Ms. Berkey Was that there might have been Not more than $300,000 spent by the agency On work that dealt with Other than asbestos-containing material And so the sentencing judge below Did provide a credit for that $300,000 My argument is on this point, Your Honor Is that even with these summary reports Which are in turn prepared on the basis Of contractors' invoices provided to the agency You have nothing but a summary of What the government spent Without a showing that what was spent Was reasonably spent And confined to what needed to be remediated Based on the criminal offense As far as that, did you try to cross-examine Or did you cross-examine to any degree about Were these specific as to certain buildings Or certain areas, or did you try to develop that? There was cross-examination of Ms. Berkey And I argue that it's fair to summarize The effect of that cross-examination As I kept the numbers from the invoices I recorded them in the reports I now and then visited the site To make sure that work being billed for Was being done And that's why this summary is conclusive As to the restitution obligation I see that my time has run Can I ask one question? When your client undertook To demolish the buildings And get the salvage material He was aware that there was asbestos on the site, right? Yes, Your Honor, he was Okay, and it was roughly three years Between the time of purchase And the time the EPA took over the property, right? I believe that's correct So to clarify, this was not The sort of environmental site that we sometimes see Where, you know, there's a dump And many parties have dumped over the years, right? I mean, the conduct your client is being charged with That forms the basis for his plea Is all conduct that relates To the demolishing of the buildings And the way in which the asbestos was handled, correct? That's correct, Your Honor The offense was conspiracy to violate the Clean Air Act So what conduct could there have been That would not hold your client fully responsible For the amount the EPA spent Less the non-asbestos materials? Well, Your Honor, the restitution statutes And whether it's 3663 or 363A Require that the restitution obligation The amount of it Be measured as that which was a result of the offense Well, why would, in this particular case Why wouldn't all the stuff that was cleaned up Be a result of your client's failure to clean it up properly? Because, Your Honor, it was already a contaminated site And allowing this restitution obligation To rest on this summary evidence Presumably if your client had done his job properly It wouldn't have been a contaminated site By the time the EPA got there If my client had done his job properly With respect to those areas Where he and the others associated in this enterprise Were working There should have been, admittedly The removal of all asbestos-containing material In accordance with the NESHAPs Which state the standards Such as wetting, burial Within certain parameters Those things should have been done And that is the basis of the plea and the conviction Thank you, Counsel You'll have your time for rebuttal Thank you, Your Honor May it please the Court My name is Matthew Morris I'm an Assistant U.S. Attorney In the Knoxville U.S. Attorney's Office In the Eastern District of Tennessee And I represented Along with co-counsel from the Department of Justice's    I would like to make a motion That the U.S. Department of Justice In this case The United States asks that this Court Affirm the District Court's order of restitution Because it was based upon It was directly related to the offense in question That is, the conspiracy to violate the Clean Air Act And because that restitution Amount sought by the United States Was supported by reliable evidence In the form of not only A summary of the EPA's expenditures Incurred in addressing The environmental contamination on site But also with the extensive testimony Of an EPA on-scene coordinator Who was the primary overseer Of the cleanup activity And who significantly testified That it was part of her responsibility To oversee the financial And manage the financial aspects of the cleanup And so although the summary That was provided by the United States To the defense and to the court Was in fact a summary It was reliably based upon Invoices and employee salary information That was overseen by EPA on-scene coordinators Who were there observing The contractors' activities And then comparing what they observed During their oversight To the invoices that were passing through And being accounted for In the EPA's cost accounting system Which is oftentimes referred to as a Scorpius report And was referred to in the briefing in this case As a Scorpius report So the United States asks that the court Find that the award of restitution Was appropriate in this case And that the amount established Was not an abuse of discretion Because as I indicated It was supported by substantial testimony The Scorpius reports Do they contain What I would call location Or building information So that the Because of the hypothetical I was putting to your adversary Which he did not concretize But I put to you as well Is how do we know that EPA In cleaning up the site Wasn't cleaning up stuff That these folks never touched Well, your honor To answer your question directly No, it does not But there was testimony During the sentencing hearing That this was essentially a war zone That not only were there buildings But there was asbestos Strewn in debris piles Contaminating railroad tracks All across the site And so while those invoices That were submitted by the various contractors May have had that kind of detail That was not before the court in this case Okay, as Let's Again, this is When I'm asking questions about facts It sounds like we don't have too many of them On these points But let's say hypothetically Are they responsible Simply because they bought the site For pre-existing Contamination Or are they only responsible For contamination Costs that are in some way related To at least their activities If not specifically their criminal activities Well, no doubt The asbestos was there since the 40s Since even maybe before World War II But the cleanup This site was Was taken by the defendant And his co-defendants And their companies In a clean state And there was testimony Through the course of the sentencing hearing Attributing all of this contamination What do you mean they took it in a clean state When you just said it was full of asbestos Well, this building may well have asbestos in it Right now, your honor And it's probably wrapped in pipes So the point would be Presumably Although this is not exactly what you said If there were any areas that were undisturbed Then There was no exposed asbestos Did the EPA go in and take the asbestos out of those buildings The EPA cleaned up Or did it clean up what was obvious Your honor As the on-scene coordinator testified She cleaned up The EPA cleaned up What was a threat To be To expose Presumably Assuming this is supported by testimony That would presumably be what had been disturbed Not what was in some building that had not been disturbed That's correct, your honor Is that clear from her testimony It may not be clear from her testimony Because the focus was on I mean, shouldn't it be Well, your honor, what I would say is That's the point Mr. Lloyd makes, I think The site condition was Was set out in terms of Testimony as well as reports that were submitted By the United States during the sentencing hearing For the court to make the conclusion That the defendants were the ones responsible For the expenditure of the $16 million at EPA Those reports, I take it, started At the time EPA comes on scene Which is after they've committed their acts and crimes That's correct You see where the kind of Potential problem we have For example, you talked about debris piles You said somebody had said it was in a clean state Does that mean that there's testimony That there were no debris piles when they took over Well, the reports that were submitted And are included with We filed them as an exhibit Because they were under seal We filed them as an exhibit in this case Established that the history of this site Was that it was an operating As Mr. Lloyd indicated, an operating factory It closed down, it shuttered It was sitting there in bankruptcy And the defendants bought it And that's when the Pardon me When did it shut down I believe it was a couple And I don't remember exactly off the top of my head But it was a few years before the defendants Obtained their salvage rights And eventually bought the real property What is the exhibit you're referring to Do you have a number Yes, your honor Where would it be It would be It's in the reports That summarize the witnesses' observations Many of whom worked at the site Prior to when it was an operational facility Begin at appendix page 47 In this court's record And how were they These were submitted During the district court sentencing They were under seal, your honor, yes Because the Again, the kind of hypothesis I'm trying to confirm or deny Is that this place was a mess to start with It could have been a Superfund site If you had been able to Or had decided to come after it At that point Well, and I don't think that's I just don't know That's what I'm That's the contention they're making Unfounded contention There's no No, but it would be important For the government to establish that Because otherwise It's hard to attribute all The cleanup that was done To the defendant Well, conversely, we have to say You did enough And they should have They should have presented such evidence Well, your honor That's the way to go at it But at least I'm trying to get You know, what's the underlying State of the record To see what are the Things that we need to look at Now, you did say then At least if we went to it Some of these witness statements Would have been from people Who were there Before his clients Even bought the place Before and during Overseeing Being involved As overseers for the In fact, the bankruptcy Trustees representative Was on site And his report of interview Again, your word about They got it in a clean state Is that somebody's words Or is that your summary That's my summary, your honor And I would use the analogy What evidence Can a fair inference of that be drawn Well, for one thing Specifically The testimony Just in reports The reports The inference is That no one was demolishing This shuttered Manufacturing facility Until the defendant And his co-defendants Showed up and started Tearing it down and salvaging it So then there were no Would you say a fair inference Is there were no debris piles There were no railroad Whatever ties You said something about railroads That that sort of stuff Wasn't there And therefore if it was there Afterwards The implication is It was from their activities Yes, your honor And presumably Your position would be That what you presented Made sure burden of proof And if the defendant Wishes to question it Then he's got to present Some evidence Yes, your honor And I would They would have the records I mean the The implication from their side Is perhaps You know, you cleaned up And tore down this building That we never touched Or that you dug up this pit That we had nothing to do with And they've never They've never made that claim Nor submitted any substantiation That it was anybody else's responsibility The debris piles The halfway torn down buildings Was anyone's responsibility But theirs It was an operating facility Prior to them coming on the scene And taking over Well, it wasn't operating But it was an addition In which it had been operating Yes, ma'am Yes, ma'am So if And I would use the analogy Of a tanker truck Of hazardous waste Parked outside of this building Other PRPs Other potentially responsible parties May have generated That waste that's in that tanker truck Or in our case The history of asbestos Was that it was a safe It was presumed safe It was extensively used in industry But it was the defendants That basically unleashed that material Poked the hole in the tanker truck out front If you will That caused the EPA As the on-scene coordinator testified To have to undertake An emergency response And a removal action To address the imminent threat presented We understand that We're just trying to test Whether there's any evidentiary viability To Mr. Lloyd's assertion Yes, Your Honor, thank you So With regard to the other issues That the defendant has raised I will rely upon the authorities That we've cited in our brief For the reasons Unless the court has questions of me Why the Mandatory Victims Restitution Act Applies in this case The United States Does not wish to address Unless the court has questions The issue of whether or not The defendant's 60-month sentence Should be sustained And the United States Because of what we set out In our 38J letter Believes that the issue With regard to whether restitution Has to be submitted to a jury Has been resolved by this court Since the initial brief Was filed by the defendant The reduction in the amount sought From $16 million down to $10 million Yes, Your Honor How was it that that happened? Well, Mr. Lloyd mentioned That the EPA reduced it And they did not The United States only sought A subset of that $16 million expense That EPA incurred So the United States As we set out in our response To the defendant's objection To ask that His request that the courts Not impose restitution That we were only seeking direct costs We weren't seeking Let's say EPA lawyer fees Indirect fees that Or indirect costs that EPA Might have otherwise pursued In a circle In a super fund cost recovery We limited it to a narrower subset Of that $16 million In what we sought in our case As restitution Okay Anything else? No Okay Thank you, Counsel Lloyd, you have three minutes for rebuttal Thank you, Your Honor It should be noted that my client In response to the war zone testimony Offered by the government Testified at sentencing That when he first was involved With this site It looked much the same I don't want the court to be left With the impression That this was a pristine Locked up site Until Mr. Sawyer And his co-defendants Arrived on the scene Your clients had undertaken To demolish seven buildings They had, Your Honor They were there for a I'm sorry, Your Honor The word escapes me But they were They were trying to pull out The valuable elements Of those buildings Salvage Thank you, Your Honor But so he does admit then That when you say They looked much the same There were significant things That were not the same They indeed turned out He had to admit that, Your Honor I don't think you could I'm not aware that you can Demolish seven buildings And have the area look Just like it did before That's true, Your Honor But I do There is testimony in the record That this site Was in a very poor condition At the beginning of this salvage work But then that's Would it be fair to say Having not read all of this record That it's fair to say that Those statements Perhaps on both sides Are somewhat general That is, people did not say That this pit Or this pile Or this quarter acre Were just the same That they had not been touched I think that's fair A fair characterization So then the question is Given the general testimony That the government presented And the fact that clearly Your people had done A lot of stuff to it Isn't that sufficient Under the evidentiary standard For the district court To have made a factual determination Given that he had Nothing more specific To deal with No, Your Honor Because of the requirement And this is part of my argument On behalf of Mr. Sawyer Because of the requirement That there be In a way akin to tort law A showing To carry the government's burden Of a causal relationship Between the costs Incurred by the EPA And the criminal conduct Of which the defendant And co-defendants Stood convicted After their pleas of guilty But doesn't the general And correct me if I'm wrong That there's something different About the restitution aspect That once you have Some connection The exact amounts Just as we do in loss calculations Or tons of marijuana calculations Only need be reasonably supported By some evidence And then we review it Under a fairly deferential standard Clear error preponderance Of the evidence Isn't that the standard For this as well? Yes, Your Honor I'm not disputing the standard I am arguing that the summaries Were simply The government did not carry Its burden far enough And I see that I'm out of time I would like to submit the case On the other arguments in the brief And for the reasons stated Mr. Sawyer asks that his sentence Be vacated by this court Thank you And, Mr. Lloyd, we appreciate Your taking this under the Criminal Justice Act Thank you, Your Honor It's the system of justice In this fairly complicated matter It was not my usual case Thank you Case will be submitted